IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

PAMELA A. DUNHAM,

                Plaintiff,                          OPINION AND ORDER

v.

                                                      21-cv-282-wmc

KILOLO KIJAKAZI, Acting Commissioner
for Social Security,

                Defendant.

Pursuant to 42 U.S.C. § 405(g), plaintiff Pamela A. Dunham seeks judicial review of the Social Security Commissioner's final determination upholding a finding that she was not disabled during the period of time relevant to his application for disability benefits insurance. Plaintiff maintains that Administrative Law Judge ("ALJ") Laura Chess erred in two respects: (1) failing to properly assess her subjective symptoms as required under SSR 16-3p; and (2) failing to adequately weigh the opinions of various medical experts. For the reasons that follow, the court rejects both challenges and will affirm the decision of the Commissioner.

BACKGROUND

**A. Overview**

Plaintiff Pamela Dunham has at least a high school education, is able to communicate in English, and has past work experience as an industrial cleaner, a production assembler, a cook, a finishing machine operator, a home attendant, and a composite job as a lead worker, all of which are either at the medium exertion level and/or are skilled positions. Dunham has not engaged in substantial gainful activity since May 1,

2019, the amended alleged disability onset date. Her date last insured is December 31, 2023.

With a birth date of January 11, 1967, Dunham was 52 years old on her amended alleged disability onset date, defining her as an individual closely approaching advanced age. 20 C.F.R. § 404.1563. In her application for social security disability benefits, Dunham claimed disability based on back injury, shoulder injury, depression, anxiety, PTSD and high blood pressure. (AR 87.)[1]

### B. ALJ Decision

ALJ Chess held a telephonic hearing on October 27, 2020, at which Dunham appeared personally and through his counsel. On December 8, 2020, the ALJ issued an opinion finding that Dunham had not been under a disability within the meaning of the Social Security Act from her alleged disability onset date through the date of the hearing.

The ALJ first determined that Dunham had the following severe impairments:

> Degenerative changes of the lumbar spine with stenosis and sciatica; post-laminectomy syndrome; right shoulder injury, bursitis, and rotator cuff tear status post arthroscopy and rotator cuff repair; right biceps tendinopathy, ruptured biceps tendon, and recurrent complete tear of the supraspinatus tendon; gastroesophageal reflux disease (GERD); hypertension; tachycardia; occipital neuralgia and headache; degenerative changes of the cervical spine; obesity; chronic pain syndrome; anxiety; and depression.

---

[1] The administrative record can be found at dkt. #15.

(AR 64.) The ALJ also considered whether Dunham's cervical human papillomavirus, facial flushing and orthostatic lightheadedness constitute severe impairments. Concluding that they did not, plaintiff does not challenge this finding on appeal.

Next, the ALJ considered whether Dunham's impairments or combination of impairments met or medically equaled various Listings, including those relating to back pain, cardiovascular issues, obesity, headaches and mental health limitations. In each instance, the ALJ concluded that they did not, and Dunham does not challenge these findings either, although she criticizes certain aspects of the ALJ's analysis as part of her challenge to the ALJ's treatment of her subjective symptoms, which the court takes up in the opinion below.

At step four, the ALJ further found that even with her impairments, Dunham had the residual functional capacity ("RFC") to perform light work, with the following, additional exertional restrictions: "can lift and/or carry 20 pounds occasionally and ten pounds frequently"; "can stand and/or walk a total of six hours and sit a total of six hours in an eight-hour workday"; "can occasionally climb ramps and stairs, stoop, kneel, and crouch"; "can never crawl or climb ladders, ropes, or scaffolds"; "can only occasionally push/pull, never overhead reach, and frequently reach in other directions with the dominant right upper extremities"; "can have occasional exposure to vibration"; "can never work in environments that are very loud as defined by the *Selected Characteristics of Occupations*"; and "can never work at unprotected heights or in the vicinity of uncovered, unguarded moving machinery." (AR 69.) The ALJ also included two, nonexertional

3

limitations: (1) "can remember and carry out simple instructions"; and (2) can have occasional changes in a routine work setting." (*Id.*)

After setting forth the standard under SSR 16-3p, however, the ALJ described and discounted plaintiff's testimony that she had difficulty with "lifting, squatting, bending, standing, reaching, sitting, kneeling, stair climbing, and concentrating," and that she is "unable to sit for more than 15 to 20 minutes at a time, stand in one spot for more than 15 minutes at a time, or lift over ten pounds with her right arm," in addition to difficult lifting anything over her head or reach in front or back with her right arm. (AR 70.) In addition, Dunham reported that she can only stand for 20 minutes before needing to sit for 15 to 20 minutes and can only walk about two blocks, and that her most comfortable position is lying down or in a recliner, which she does five to six hours a day. As for mental limitations, Dunham also reported difficulty with memory, that she can only pay attention for an hour or two, that she sometimes forgets some of the steps of spoken instructions, and that she does not handle stress well.

The ALJ discounted Dunham's account of all of these symptoms and limitations for several reasons. First, she concluded that her allegations about her physical symptoms were not supported by the weight of the medical evidence. In an admittedly scattershot and disorganized approach, the ALJ identified conflicting, "normal" findings in medical records or Dunham's apparent lack of reporting of certain symptoms on certain days, or at least none deemed worthy of note in the medical record. (AR 71-72.) The ALJ also reviewed the treatment record with respect to her mental functioning, and also concluded that it did not support a finding that her reported concentration, memory and anxiety were as severe

4

as she reported, primarily by focusing on records describing Dunham as alert, pleasant and oriented. (AR 72.)

Second, the ALJ also considered Dunham's daily activities, and concluded that she is not as limited as one would expect if her reports about physical condition were credited. Specifically, the ALJ noted that: (1) Dunham's reported driving back and forth to Madison while her husband was recovering at a nursing home for bypass surgery; (2) she had the ability to manage her own personal care; and (3) she had the ability to cook "easy and fast meals," do "light cleaning and laundry with help from her daughter" and grocery shop.

Next, the ALJ reviewed the medical opinion testimony. The ALJ first considered the opinions of Michelle Holmes, M.D., the state agency medical consultant who reviewed Dunham's record on reconsideration. Holmes opined that Dunham could perform light exertional work, with some additional, nonexertional restrictions. The ALJ found Holmes' opinion to be "partially persuasive," agreeing that Dunham could perform light work and adopting a number of the nonexertional restrictions Holmes found, but concluded that "more restrictive postural, environmental, and manipulative limitations" were warranted in light of the overall record at the time of the hearing, specifically noting records concerning her right shoulder and cervical spine. (AR 74.)

The ALJ also reviewed the functional capacity evaluation report conducted by occupational therapist Heidi Alderman on October 5, 2018, opining that Dunham could perform medium exertion level work and did not need the exertional restrictions adopted by the ALJ in formulating the RFC. Nonetheless, the ALJ found that this opinion was only "partially persuasive" as well, crediting Alderman's opinion to the "extent that it shows the

5

claimant's decreased ability to work, is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." (AR 75.)

Dunham also sat for a consultative examination with Jeffrey Nesta, M.D., on August 16, 2019. He, too, concluded that Dunham could perform medium exertional level work, while the ALJ credited additional evidence received at the hearing in imposing additional restrictions not found by Dr. Nesta, again citing records concerning Dunham's right shoulder and cervical spine. (AR 75.)

Finally, the ALJ considered the opinions of Dunham's treating orthopedist, Michael Angeline, M.D. Relying on the functional capacity evaluation described above, Dr. Angeline initially opined in an October 10, 2018, report that Dunham could perform medium exertion level work. Because the ALJ found this functional capacity evaluation only partially persuasive as well, she also discounted Angeline's opinion here, concluding that it: (1) was inconsistent with other medical evidence and Angeline's own treatment records during that period; and (2) failed to "consider the combined effects of all the claimant's severe physical impairments." (AR 76.) However, on March 10, 2020, Dr. Angeline completed another form in which he opined that: (1) Dunham's "experience of pain was sufficiently severe to frequently interfere with attention and concentration"; (2) she had "extreme limitation" in dealing with normal stresses of competitive work, including maintaining a consistent pace, engaging with coworkers and supervisors and not taking excessive breaks; and (3) she "was unable to complete a normal workday and workweek without interruptions for psychologically based symptoms." (AR 76.) Angeline further

concluded that Dunham could sit for 15 minutes and stand for 20 minutes at a time, and could sit for no more than two hours a day and stand and walk for no more than two hours a day. Finally, Angeline opined that Dunham would need to lay down for two to three hours in an eight-hour period.

The ALJ found Dr. Angeline's later opinions unpersuasive, noting that the handwriting was not the same throughout the form, raising a question as to who completed it. Regardless of the author, the ALJ also concluded that the opinions are inconsistent with the medical record overall, as well as Dr. Angeline's own treatment notes. Specifically, the ALJ pointed out the medical records indicating that certain aspects of Dunham's physical examination were normal.

With input from the vocational expert, the ALJ ultimately concluded that Dunham could not perform her past relevant work in light of the ALJ's RFC formulation, but that there were other jobs in sufficient numbers in the national economy that Dunham could perform, including line attendant, folder and inspector. As such, the ALJ concluded that Dunham was not under a disability from her alleged onset disability date through the day of the hearing, and this appeal followed.

OPINION

The standard by which federal courts review a final decision by the Commissioner of Social Security is now well-settled: findings of fact are "conclusive," so long as they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

Moreover, provided the Commissioner's findings under § 405(g) are supported by this kind of "substantial evidence," a federal court may not reconsider facts, re-weigh the evidence, decide questions of credibility, or otherwise substitute its own judgment for that of the ALJ. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Finally, where conflicting evidence allows reasonable minds to reach different conclusions about a claimant's disability, the responsibility for the decision falls on the Commissioner. *Edwards v. Sullivan*, 985 F.2d 334, 336 (7th Cir. 1993). Even so, the court must conduct a "critical review of the evidence," *id.*, ensuring that the ALJ has provided "a logical bridge" between findings of fact and conclusions of law. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018).

As described above, plaintiff raises two, basic challenges, which the court addresses below in turn.

I. Evaluation of Plaintiff's Subjective Statements

*First*, plaintiff contends that the ALJ erred in evaluating her subjective symptoms, specifically criticizing perceived cherry-picking from the medical record to support her finding that Dunham's account of her physical limitation is inconsistent with the record. The court agrees that the ALJ's lengthy recount of the medical record in the specific section addressing Dunham's subjective statements focuses on normal findings, and often points out a lack of observations in the record not relevant to the reason for her visit. For example, the ALJ points out that no gastrointestinal issues were noted during Dunham's visit for chronic shoulder and back pain, or points out that Dunham had no *left* shoulder pain during a particular visit, while failing to note that her right shoulder, which eventually requiring surgery, *was* painful. (AR 70-73.)

Critically, however, the ALJ described the medical record in a more cohesive manner earlier in the opinion as part of her description of the basis for finding severe impairments, and detailing complaints of pain, abnormal examination findings and MRI and other objective test results. (AR 64-66.) Reading the opinion as a whole, therefore, the ALJ did not ignore aspects of the record that support findings of pain and other physical limitations, nor "cherry pick" only evidence supporting her conclusions. More critically, plaintiff fails to explain how the medical record supports Dunham's extreme testimony that she could only sit for 15 to 20 minutes at a time, stand for 20 minutes at a time, and walk about two blocks, *or* that she had to lie down for five to six hours a day. At most, in her reply, plaintiff simply argues that she has "limitations regarding physical abilities" (Pl.'s Reply (dkt. #23) 2), but the ALJ did not question that she has pain and other physical limitations. Indeed, the ALJ *credited* her physical limitations in limiting Dunham to light work and including a number of additional, exertional limitations, including no overheard reaching with her right arm to address her shoulder pain. Instead, the ALJ relied only in part on aspects of the record that described normal findings -- specifically with respect to gait, strength, sensation and reflexes -- to conclude that Dunham was not as physically limited as she claimed, at least with respect to sitting, standing and walking. While the ALJ could have streamlined her opinion, she also built a logical bridge between the medical record as a whole and her conclusion that Dunham's own account of her limitations were not entirely consistent with that record.

*Second*, plaintiff faults the ALJ for her reliance on Dunham's activities of daily living to discount her subjective statements. Specifically, she argues that driving a car and making

9

simple meals does not show an ability to work. (Pl.'s Opening Br. (dkt. #20) 9.) However, the ALJ did *not* conclude that she could work based on her ability to drive or make simple meals; rather, she relied on these activities of daily living to discount Dunham's subjective statements about her limitations.

Specifically, the fact that she was able to drive to and from Madison, from her home in Beloit (roughly an hour each way), on a regular basis while her husband was recovering from surgery in a nursing home casts reasonable doubt on her claim that she could only sit for 15 minutes at a time. Moreover, her ability to make simple meals also gives rise to an inference that she can stand for longer periods of time than she reported. Regardless, the ALJ considered these two activities in conjunction with other, reported activities, including performing personal care, caring for her cat and dog, doing light cleaning and laundry (albeit often with the help of her daughter), and gardening about once per week. The court sees no error in the ALJ's consideration of these activities not to prove her ability to work fulltime, but rather to evaluate Dunham's arguably inconsistent, subjective statements about her physical limitations. *See* SSR 16-3p, 2017 WL 5180304 (permitting consideration of daily activities as a factor in evaluating a claimant's subjective statements about her symptoms); *Beardsley v. Colvin*, 758 F.3d 834, 838 (7th Cir. 2014) (explaining "it is proper for the Social Security Administration to consider a claimant's daily activities in judging disability," but still "urg[ing] caution in equating these activities with the challenges of daily employment in a competitive environment").

**II. Treatment of Medical Opinion Testimony**

Because plaintiff's petition was filed after March 2017, 20 C.F.R. § 404.1520c guides this court's consideration of her other contention that the ALJ erred in weighing the medical opinion testimony. .Under that regulation, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 404 .1520c(a). Instead, the "most important factors" in weighing a medical source's opinions are now supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). As for supportability, the regulations state: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(1). For consistency, the regulations further state: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(2). Finally, an ALJ may, but is not required to, explain how she considered the source's relationship with the claimant, specialization, and any other relevant factors. 20 C.F.R. § 404.1520c.

Here, plaintiff faults the ALJ for her reliance on the state agency medical consultant, Madeline Holmes, M.D., who conducted a record review upon reconsideration, because Dr. Holmes' review occurred before Dunham's right shoulder arthroscopy and additional

11

treatment for cervical and lumbar pain. As for the first criticism, the ALJ expressly recognized that Dr. Holmes' opinion came before Dunham's shoulder surgery, explaining that she found Holmes' opinion only partially persuasive:

> because the evidence received into the record, after the reconsideration determination, did not provide any new or material information that would alter any findings about the claimant's ability to perform light exertional work with occasional stooping and crouching. However, while this opinion was reasonable, based on the evidence available at the time, additional evidence received into the record at the hearing level convinces me that the claimant was more limited than originally thought and would be further reduced to the light exertional limit with more restrictive postural, environmental, and manipulative limitations.

(AR 74.) The ALJ then reviewed plaintiff's November 2019 shoulder surgery, including that Dunham reported "improvement with regards to her overall shoulder function after her shoulder surgery," including that she was not taking anything for pain by January 2020 and that his subsequent physical examination revealed no tenderness and normal strength. (*Id.*) Moreover, as described above, in formulating the RFC, the ALJ accommodated Dunham's right shoulder issues by limiting her to only "occasionally push/pull, never overhead reach, and frequently reach in other directions with the dominant right upper extremities." (AR 69.)

As for plaintiff's argument that the ALJ erred in relying on Dr. Holmes' opinion because Dunham continued to have treatment for cervical and lumbar issues after her review, plaintiff does not argue that these treatment records contained "new, significant medical diagnoses" that "reasonably could have changed the reviewing physician's opinion," warranting a new review. *Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018).

In fact, the ALJ acknowledged the February 2020 cervical CT scan, but plaintiff does not argue that this test revealed a new diagnosis.  (AR 74.)

Plaintiff also contends that the ALJ erred in her treatment of Dr. Angeline's 2020 opinion.  As best as the court can discern, however, plaintiff contends that the ALJ inappropriately rejected Angeline's 2020 opinion based on it being inconsistent with his prior 2018 opinion, which in turn relied on a 2018 functional capacity examination ("FCE").  (Pl.'s Opening Br. (dkt. #20) 13.)  Plaintiff contends that physicians "may update their views without being inconsistent if their later opinions are based on a patient's changed condition." (*Id.* (citing *Lamber v. Berryhill*, 896 F.3d 768, 775 (7th Cir. 2016)).)

However, this argument mischaracterizes the ALJ's consideration of Angeline's 2020 opinion.  While she mentioned that Dr. Angeline did not provide an explanation for the drastic changes between his 2018 and 2020 opinions, the ALJ did not discount the latter because it contradicted the 2018 FCE or his opinion based on that test -- at least not solely -- and notably, the ALJ only found the earlier 2018 FCE "partially persuasive." (AR 75.)  Instead, she *discounted* Dr. Angeline's 2020 opinion because of questions as to who completed the form, noting different handwriting, and *more critically*, because his opinion that Dunham could perform less than sedentary work was inconsistent with other medical evidence, including Angeline's own treatment records.  (AR 77.)  In particular, she cites medical records from early 2020 noting normal gait, normal right shoulder strength post-surgery, and that Dunham was not taking any medication for pain.  (*Id.*)  Accordingly, the court rejects this challenge as well.

ORDER

IT IS ORDERED that:

1) The decision of defendant Kilolo Kijakazi, Acting Commissioner of Social Security, denying plaintiff Pamela A. Dunham's application for disability insurance benefits is AFFIRMED.

2) The clerk of court is directed to enter judgment in defendant's favor and close this case.

Entered this 5th day of May, 2022.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge